IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRAIG W. ENGLAND,               )<br>                                                )<br>              Plaintiff,             )<br>                                                )<br>v.                                          )<br>                                                )<br>COMMISSIONER of the Social  )<br>Security Administration,            )<br>                                                )<br>              Defendant.           ) | Case No. CIV-19-98-SPS |

## OPINION AND ORDER

The claimant Craig W. England requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step one requires the claimant to establish that he is not engaged in substantial gainful activity.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-six years old at the time of the administrative hearing (Tr. 31, 144). He completed high school and has worked as a livestock farm worker, highway maintenance worker, janitor, and production assembler (Tr. 24, 163). The claimant alleges inability to work since January 5, 2016 due to PTSD, bi-polar disorder, depression, comprehension problems, insomnia, chronic back pain, and foot pain (Tr. 162).

## Procedural History

On May 5, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His applications were denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 10, 2018 (Tr. 15-26). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, and that he could perform simple, routine tasks and interact with supervisors on a superficial work basis when needed to receive instructions, but that the job should not involve over-the-shoulder supervision. She further found he could work in proximity to co-workers, but that he should have limited direct interaction with them and

that the job should not require close cooperation and communication with co-workers in order to complete work tasks, that he would work best in a job where he worked alone, and that he should not interact with the general public.  Finally, she found that he was able to work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline, and that any job should not require more than ordinary and routine changes in work setting or work duties (Tr. 20).  The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, industrial sweeper cleaner, laundry worker, and housekeeping cleaner (Tr. 24-25).

### Review

The claimant contends that the ALJ erred by:  (i) failing to account for ailments including neck and shoulder problems, cervicalgia, and right lumbosacral strain; (ii) failing properly assess the opinions of a treating physician, a consultative examiner, and an "other source" treatment provider; and (iii) failing to properly identify jobs he could perform.  Because the ALJ does appear to have improperly evaluated the opinion evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of bipolar disorder, PTSD, and marijuana substance addiction disorder (Tr. 17).  Prior to the alleged onset date, the claimant was hospitalized for depression with frequent mood swings, rage, and thoughts of suicide from September 4, 2013 through September 11, 2013 (Tr. 505).  He was discharged after maximizing inpatient treatment and his condition was noted to include a significant reduction of depressive symptoms and mood swings, free of any overt

aggression, and denial of any thought of suicide (Tr. 506). The relevant medical evidence after the alleged onset date reveals that the claimant received treatment at Redbird Smith Health Center and was largely treated by Nurse Practitioner Kelly Hokit, and his diagnoses included bipolar disorder and hypertension (Tr., *e. g.*, 268-274). The claimant also attended behavioral health therapy, reporting depression and anxiety on May 2, 2016 that had particularly increased after a close family member died by suicide in the claimant's home, although he did report a decrease in depressive symptoms on May 17, 2016, noting better anger control and fewer outbursts (Tr. 288). In August 2016, however, the claimant again reported continued symptoms of depression, with daily crying spells, to Nurse Practitioner Linda Gale (Tr. 460). In fact, the claimant's mother requested help on his behalf due to noticeable suicidal ideation (Tr. 481). The claimant was not taken inpatient at that time, although it was discussed (Tr. 481). Notes during this time also reflect consistent drug use and marital problems (Tr. 476, 481).

On June 2, 2016, Nurse Practitioner Gale completed a "Medical Examination Form," in which she indicated that the claimant's diagnoses included bipolar disorder, unspecified anxiety disorder, and unspecified insomnia, and that his medical conditions prevented him from working. She also indicated that his condition could be controlled by medication, that it was not caused by alcohol or drug use, and that he was not able to work at that time (Tr. 501). She indicated his work tolerance as "None" (Tr. 501).

The claimant also received treatment with Dr. Todd K. Pogue, D.O., at Healthy Living Behavioral Health Adult Services (Tr. 407). Treatment notes indicate the claimant's continued diagnosis of and treatment for bipolar disorder (Tr. 407). On January

-5-

19, 2018, Dr. Pogue completed a Mental RFC Assessment, in which he checked nineteen out of twenty-three boxes indicating areas in which the claimant had no useful ability to function on a sustained work basis, including behave in an emotionally stable manner, demonstrate reliability, and work without deterioration or decompensation causing exacerbation of symptoms or adaptive behaviors (Tr. 531). He left unchecked areas including the ability to understand, remember, and carry out very short and simple instructions, make simple work-related decisions, interact appropriately with the general public, and follow work rules (Tr. 531).

On July 11, 2016, Dr. Terry Efird, Ph.D., conducted a mental diagnostic evaluation of the claimant (Tr. 382-385). Dr. Efird assessed the claimant with major depressive disorder, moderate, as well as PTSD, cannabis dependence, and methamphetamine abuse (Tr. 384). Dr. Efird stated, *inter alia*, that the claimant had the capacity for basic cognitive tasks required for basic work-like activities, but that although he could track and respond adequately at the evaluation, the level of performance indicated difficulty with immediate auditory attention span (Tr. 385).

As to his mental impairments, a state reviewing physician initially determined that the claimant's impairments were non-severe (Tr. 68-69). On reconsideration, Dr. Gary Lindsay determined that he did have severe mental impairments, and found that he had mild restrictions of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, and pace, with no episodes of decompensation of extended duration (Tr. 81). Dr. Lindsay then determined that the claimant had moderate limitations in the ability to understand and remember detailed

instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervision, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Additionally, Dr. Lindsay found that the claimant was markedly limited in the ability to interact appropriately with the general public (Tr. 83-84). He thus concluded that the claimant could understand, retain, and perform simple and some complex tasks on a sustained basis, but that he has difficulty with interpersonal relations and would perform better in jobs with limited requirements to interact with coworkers. Additionally, he opined that the claimant would not interact well with the public, but that he could work with normal supervision and in a setting where he worked mostly alone, and that he could adjust to the mental demands of the workplace and carry out instructions (Tr. 84).

In her written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence contained in the record. As relevant to this appeal, the ALJ noted at step two that the claimant's diagnosis of cervicalgia was given by a nurse practitioner, who is considered not an acceptable medical source, and that there was no diagnosis for carpal tunnel (as the claimant testified there was at his administrative hearing), and thus found these impairments were not medically determinable (Tr. 18). At step four, the ALJ assigned little weight to Nurse Practitioner Gale's opinion that the claimant had no work tolerance, stating that it was not consistent with the totality of the (unspecified) medical evidence in the record (Tr. 21). She then assigned little weight to

Dr. Efird's opinion, concluding (again without pointing to any specific evidence) that the claimant appeared to be capable of some work-related activities, and that he could count change but not pay bills or use a checkbook (Tr. 22). The ALJ further noted the claimant's treatment with Dr. Pogue but gave his mental RFC Assessment little weight because it was not consistent with "the totality of the evidence" and opined on an issue reserved to the Commissioner (Tr. 22-23). The ALJ also erroneously stated that Dr. Pogue checked every box on the RFC assessment form, which appeared to be used as support for assigning little weight to the opinion (Tr. 23). She then assigned little weight to the state reviewing physicians as to the claimant's mental impairments, finding that the claimant could not perform complex tasks (Tr. 23). She then concluded that the claimant was not disabled.

      The claimant asserts that the ALJ erred in evaluating the opinion evidence in the record, and the undersigned Magistrate Judge agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or

-8-

not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

Importantly, here it appears the ALJ relied on no opinion or medical evidence in the record in reaching her RFC assessment. As to each treating, examining, and reviewing physician, she assigned little weight. She appeared to reach these conclusions based on the "totality of the evidence" (all of which she appears to reject) and cited no evidence specifically in support of her findings. Thus, the ALJ erred in failing to conduct the requisite analysis with regard to Dr. Pogue's opinion, as well as Dr. Efird's and Dr.

Lindsay's. Although the ALJ noted the proper analysis at the outset of step four, she failed to properly apply it when she ignored the evidence in the record and proceeded to reject every opinion of her examining, consultative, and reviewing physicians. Instead, she imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to his mental limitations, specifically evidence related to the claimant's limitations in auditory attention span, as well as the evidence that work could cause a deterioration, decompensation, and/or exacerbation of his symptoms and adaptive behaviors. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).

Finally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), she *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. An opinion on an issue reserved to the Commissioner is not entitled to special significance, but the ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204

(10th Cir. 2002), *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3. The ALJ's finding that the opinions were inconsistent with medical evidence and treating notes might have justified the refusal to accord controlling weight if the ALJ had not misstated and ignored evidence, but the ALJ would have nevertheless been required to determine the proper weight to give those opinions by applying the *Watkins* factors. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]."), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ failed to perform any of this analysis.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**